UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
CRAIG WILKINS,                                           :

                                          Plaintiff,                       :      OPINION AND ORDER

    -v.-                                             :      20 Civ. 543 (GWG)

SPECIALIZED LOAN SERVICING, LLC,         :

                                          Defendant.         :
---------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Craig Wilkins brings this action against Specialized Loan Servicing, LLC ("SLS") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. See Complaint, filed Jan. 17, 2020 (Docket # 1) ("Comp."). Both parties have moved for summary judgment.[1] For the reasons stated below, SLS's motion is granted and Wilkins' motion is denied.

---

[1] See Defendant's Motion for Summary Judgment, filed Apr. 21, 2022 (Docket # 31) ("Def. Mot."); Defendant's Rule 56.1 Statement, annexed as Ex. 1 to Def. Mot. (Docket # 31-1) ("Def. 56.1 Statement"); Defendant's Memorandum of Law in Support of Motion for Summary Judgment, annexed as Ex. 2 to Def. Mot. (Docket # 31-2) ("Def. Mem."); Defendant's Second Motion for Summary Judgment, filed Apr. 22, 2022 (Docket # 34) ("Def. Mot. 2"); Declaration of Cynthia Wallace, annexed as Ex. 1 to Def. Mot. 2 (Docket # 34-1) ("Wallace Decl."); Plaintiff's Amended Motion for Summary Judgment, filed Apr. 27, 2022 (Docket # 36) ("Pl. Mot."); Plaintiff's Rule 56.1 Statement, annexed as Ex. 1 to Pl. Mot. (Docket # 36-1) ("Pl. 56.1 Statement"); Affidavit of Craig Wilkins, annexed as Ex. 3 to Pl. Mot. (Docket # 36-3) ("Wilkins Aff."); Plaintiff's Memorandum of Law in Support of Amended Motion for Summary Judgment, annexed as Ex. 4 to Pl. Mot. (Docket # 36-4) ("Pl. Mem."); Defendant's Memorandum of Law in Opposition, filed May 13, 2022 (Docket # 37) ("Def. Opp."); Defendant's Response to Plaintiff's Rule 56.1 Statement, annexed as Ex. 1 to Def. Opp. (Docket # 37-1) ("Def. Supp. 56.1 Statement"); Plaintiff's Reply Memorandum, filed May 20, 2022 (Docket # 40) ("Pl. Reply").

Plaintiff never filed any opposition to defendant's motion. As explained in an Order issued by the Court, the Court construes plaintiff's own summary judgment motion papers as opposing the defendant's motion. See Order, dated July 12, 2022 (Docket # 43).

I.  FACTS

The following facts are undisputed.

Wilkins owns a property located at 85-21 213th Street, Hollis, New York. See Def. 56.1 Statement ¶ 1; Pl. 56.1 Statement ¶ 1. On April 28, 2006, Wilkins signed two notes secured by mortgages on 85-21 213th Street, one an adjustable rate note in the amount of $512,000 (the "First Mortgage"), and a second fixed rate note in the amount of $128,000 (the "Second Mortgage"). See First Mortgage, annexed as Ex. A to Wallace Decl.; Second Mortgage, annexed as Ex. B to Wallace Decl.; Def. 56.1 Statement ¶¶ 1-2; Pl. 56.1 Statement ¶¶ 2-6. Wilkins defaulted on the mortgage loans in 2007 or 2008. See Def. 56.1 Statement ¶ 4; Pl. 56.1 Statement ¶ 8. In 2010, Deutsche Bank National Trust Company ("Deutsche Bank") filed a foreclosure action against Wilkins in New York Supreme Court, see Deutsche Bank Complaint, dated May 25, 2010, annexed as Ex. 2 to Wilkins Aff., which it voluntarily discontinued in 2012, see New York Supreme Court Order, dated Feb. 8, 2012, annexed as Ex. 3 to Pl. Mot., at 3; Def. 56.1 Statement ¶ 6; Pl. 56.1 Statement ¶¶ 9-11.

In January and February of 2017, SLS informed Wilkins that it had assumed service of the two mortgage loans. See Notice Letter, dated Jan. 11, 2017, annexed as Ex. C to Wallace Decl.; Notice Letter, dated Feb. 10, 2017, annexed as Ex. D to Wallace Decl.; Def. 56.1 Statement ¶¶ 9-10; Pl. 56.1 Statement ¶ 13. Between 2017 and 2020, SLS called Wilkins approximately 80 times regarding his unpaid mortgage loans. See Pl. 56.1 Statement ¶ 14; Def. Supp. 56.1 Statement ¶ 14. During several of these calls, SLS informed Wilkins that failure to make payments due on his mortgages could result in a foreclosure action being filed. See Pl. 56.1 Statement ¶ 15; Def. Supp. 56.1 Statement ¶ 15; Transcript of Sept. 25, 2019 Telephone Call, annexed as Ex. 8 to Pl. Mot., at 2, 5.

II.     LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); accord Morales v. Quintel Ent., Inc., 249 F.3d 115, 121 (2d Cir. 2001) ("[A]ll reasonable inferences must be drawn against the party whose motion is under consideration.").

Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original) (internal quotation omitted), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). See Fed. R. Civ. P. 56(c), (e). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (punctuation and quotation omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough

evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247-48); accord El-Nahal v. Yassky, 835 F.3d 248, 252, 256 (2d Cir. 2016).

III.    DISCUSSION

    A. Fair Credit Reporting Act Claim

The FCRA provides that:

A person shall not use or obtain a consumer report for any purpose unless--

> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

The FCRA establishes several purposes for which a person may obtain a consumer's credit report, including that the person "intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation." Id. § 1681b(a)(3)(E). A credit report may also be permissibly obtained based on a legitimate business need, so long as it is "in connection with a business transaction that is initiated by the consumer," or for the purpose of "review[ing] an account to determine whether the consumer continues to meet the terms of the account." Id. § 1681b(a)(3)(F).

"The FCRA creates a private right of action against credit reporting agencies for the negligent or willful violation of any duty imposed under the statute." Neclerio v. Trans Union, LLC, 983 F. Supp. 2d 199, 208 (D. Conn. 2013) (internal quotation marks and alterations omitted). "However, because even consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer

reports only for permissible purposes, the FCRA also extends to the conduct of parties who request credit information." Braun v. Client Servs. Inc., 14 F. Supp. 3d 391, 395 (S.D.N.Y. 2014) (punctuation omitted). "To state a claim for civil liability based on Section 1681b, a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, and that the violation was willful or negligent." Perl v. Am. Express, 2012 WL 2711270, at *2 (S.D.N.Y. July 9, 2012) (internal citations omitted); accord Farkash v. RJM Acquisitions Funding, Inc., 2012 WL 1948643, at *2 (S.D.N.Y. May 29, 2012).

The parties each seek summary judgment on Wilkins' claim that SLS "violated FCRA by unlawfully retrieving Plaintiff's credit report on a delinquent account to which it already had knowledge of and where there was no permissible reason to obtain said report." Pl. Mem. at 23; see Def. Mem. at 8-12. SLS argues that it did not obtain a credit report on Wilkins but that, in any event, doing so would not have violated the FCRA because SLS had a "permissible purpose" for obtaining Wilkins' credit report. See Def. Mem. at 9-10.

It is not necessary to reach the second argument because Wilkins has supplied no admissible evidence that would allow a reasonable jury to conclude that SLS obtained a credit report on Wilkins. Wilkins cites to a number of transcripts of calls between SLS and Wilkins and argues that these transcripts "support[] the above claims." See Pl. Mem. at 24. However, nothing in the call transcripts allows the inference that SLS obtained Wilkins' credit report. Wilkins has also produced an affidavit which contains the statement that "SLS also violated FCRA by unlawfully retrieving my credit report on a delinquent account to which it already had knowledge of . . . ." See Wilkins Aff. ¶ 35. This statement does not support Wilkins' claim because Fed. R. Civ. P. 56(c)(4) requires that any affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is

competent to testify on the matters stated." Wilkins' affidavit provides no basis for a finding that Wilkins had personal knowledge of this fact. Finally, while Wilkins has produced a copy of his credit report, see Merged Infile Credit Report, dated Oct. 28, 2019, annexed as Ex. 13 to Pl. Mot., nothing on the report ties it to SLS. Indeed, the report itself indicates that it was sent to "Jet Direct Funding Corp.," see id. at 1, and Wilkins points to nothing in the record that ties this entity to SLS.[2]

While it bore no burden of proof, SLS has produced an affidavit from Cynthia Wallace, a Second Assistant Vice President at SLS, who states that she has "reviewed SLS' files and inquired of SLS' credit department," and that "SLS has not pulled any credit reports on Wilkins since SLS assumed service of the mortgage loans in January and February 2017." See Wallace Decl. ¶¶ 2, 31.

In light of this evidence, no reasonable jury could find, as Wilkins contends here, that SLS "obtain[ed]" Wilkins' credit report. See 15 U.S.C. § 1681b(f). Thus, summary judgment is granted for SLS on Wilkins' FCRA claim.

B.     Fair Debt Collection Practices Act Claims

The FDCPA "focuses on regulating interactions between 'debt collectors' and 'consumers.'" Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 134 (2d Cir. 2010). The FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008) (citing 15 U.S.C. § 1692k). To establish a violation under the FDCPA,

---

[2] To support its contention that SLS unlawfully retrieved Wilkins' credit report, Wilkins' statement pursuant to Local Civil Rule 56.1 cites only to his own complaint and SLS's answer. See Pl. 56.1 Statement ¶ 29. As explained by separate order issued today, the portion of the answer cited by Wilkins was obviously a scrivener's error and has been deemed amended.

> (1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.

Schuh v. Druckman & Sinel, L.L.P., 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010) (quoting Healy v. Jzanus Ltd., 2002 WL 31654571, at *2 (E.D.N.Y. Nov. 20, 2002)).

The provisions of the FDCPA set forth a series of limitations on the content and manner of a debt collector's interactions with a consumer. See 15 U.S.C. §§ 1692b-1692j. "[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" Jacobson, 516 F.3d at 90 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)).

SLS has not contested that it is a debt collector as defined by the FDCPA, see 15 U.S.C. § 1692a(6), and has not contested that Wilkins is a consumer as defined by the FDCPA, see id. § 1692a(3). The only element to be resolved on Wilkins' claims under the FDCPA is whether SLS "has engaged in any act or omission in violation of FDCPA requirements." Schuh, 751 F. Supp. 2d at 548.

Wilkins argues that SLS violated the FDCPA's prohibitions against (1) making false or misleading representations in connection with a debt, see 15 U.S.C. § 1692e; (2) causing a consumer's "telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass," id. § 1692d(5); and (3) communicating with a consumer "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication," id. § 1692c(a)(3). See Pl. Mem. at 9, 19. We address each of these claims next.

    1.  <u>False or Misleading Representations</u>

Wilkins argues that SLS violated the FDCPA by making false or misleading representations regarding the Second Mortgage.  See id.  Specifically, Wilkins claims that in various phone calls SLS falsely represented that the Second Mortgage debt was enforceable and that SLS could bring a foreclosure action.  See id. at 19.  Wilkins claims that these statements were false or misleading because the Second Mortgage was a "bad debt" that had been accelerated as a result of the 2010 foreclosure action and the six-year statute of limitations period on enforcement of the mortgage through foreclosure or otherwise had therefore expired at the time of the calls.[3]  See id. at 19-20.  SLS argues that it did not make any misrepresentations because the mortgage was de-accelerated by the dismissal of the initial foreclosure action in 2012 and remained enforceable at the time of the calls.  See Def. Mem. at 13-14.

      a.     Applicable Law

Wilkins argues that SLS violated 15 U.S.C. § 1692e, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  See Pl. Mem. at 9.

In the Second Circuit, courts assessing potential violations of § 1692e are guided by two principles: (1) the FDCPA "must be liberally construed to effectuate its stated purpose," and (2) "collection notices are to be looked at from the perspective of the 'least sophisticated consumer.'"  Taylor v. Fin. Recovery Servs., 886 F.3d 212, 214 (2d Cir. 2018).  A debt collector may be liable under the FDCPA for "falsely representing that the collector had the authority to

---

[3] At times, Wilkins has asserted that the Second Mortgage was unenforceable because it was resolved as part of the modification of the First Mortgage.  Wilkins stated this repeatedly to SLS over the telephone.  See Pl. Mem. at 11, 14 (quoting call transcripts).  SLS contests this claim in its summary judgment brief.  See Def. Mem. at 1, 4, 12, 17-18.  However, Wilkins' filings now argue only that the Second Mortgage was no longer enforceable because the statute of limitations had expired, see Pl. Mem. at 3; Pl. Reply at 3-4, and thus we do not address the claim as to the modification.

initiate legal proceedings against the debtor." Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 94 (2d Cir. 2012) (citing Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993)). "To determine whether a debt collector made false threats in violation of [§ 1692e], courts consider two elements: (1) whether, from the perspective of the least sophisticated consumer, the debt collector threatened to take action and (2) whether the allegedly threatened action could not legally be taken or was not intended to be taken." Moukengeschaie v. Eltman, Eltman & Cooper, P.C., 2016 WL 1274541, at *4 (E.D.N.Y. Mar. 31, 2016). Whether a communication from a debt collector is false or misleading under the FDCPA is a question of law. See Kagan v. Selene Fin. L.P., 210 F. Supp. 3d 535, 545 (S.D.N.Y. 2016).

Wilkins maintains that SLS violated the FDCPA by falsely representing that it could initiate foreclosure proceedings. He argues this representation was false because the debt at issue was accelerated by the 2010 Deutsche Bank foreclosure action and the time for bringing a foreclosure action had expired six years thereafter. See Pl. Mem. at 9, 19; Pl. Reply at 3-4, 7-8.

### b. Analysis

As noted, the parties agree that by filing a foreclosure action on the Second Mortgage in 2010, Deutsche Bank accelerated the amounts Wilkins owed on the Second Mortgage. See Pl. 56.1 Statement ¶ 19; Def. Supp. 56.1 Statement ¶ 19; see also Deutsche Bank Complaint, at *5 ("Plaintiff elects to call due the entire amount secured by the mortgage"). The parties also agree that Deutsche Bank voluntarily discontinued that action in 2012. See Def. 56.1 Statement ¶ 6; Pl. 56.1 Statement ¶ 11; see also Dismissal of Deutsche Bank Action, dated Feb. 8, 2012, annexed as Ex. 3 to Wilkins Aff. (granting motion to "voluntarily discontinue this action" as Deutsche Bank "does not wish to proceed with the foreclosure"). The parties disagree as to whether the dismissal of that action operated to "de-accelerate" the mortgage.

In New York, an action to foreclose on a mortgage is subject to a six-year statute of limitations. N.Y. C.P.L.R. § 213(4); see Retemiah v. Bank of N.Y. Mellon, 144 N.Y.S.3d 627, 628 (2d Dep't 2021). "With respect to a mortgage payable in installments, separate causes of action accrue[] for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due." Wells Fargo Bank, N.A. v. Burke, 943 N.Y.S.2d 540, 542 (2d Dep't 2012). However, if such a mortgage is accelerated, "the entire amount is due and the Statute of Limitations begins to run on the entire debt." Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A., 120 N.Y.S.3d 393, 394 (2d Dep't 2020).

"Where acceleration of a mortgage debt upon default is made optional with the holder of the note and mortgage, the debt may be accelerated by the mortgagee's taking of 'some affirmative action . . . evidencing the holder's election to take advantage of the accelerating provision.'" 53rd St., LLC v. U.S. Bank Nat'l Ass'n, 8 F.4th 74, 78 (2d Cir. 2021) (quoting Burke, 943 N.Y.S.2d at 542). One action that may trigger the acceleration of a mortgage debt is the initiation of a foreclosure action. See id. at 78; accord Burke, 943 N.Y.S.2d at 542-43. However, even once accelerated, a mortgagee may "de-accelerate," or revoke its decision to accelerate the debt, through "an affirmative act of revocation occurring during the six-year statute of limitations period subsequent to the initiation of the prior foreclosure action." NMNT Realty Corp. v. Knoxville 2012 Tr., 58 N.Y.S.3d 118, 120 (2d Dep't 2017); accord Fed. Nat'l Mortg. Ass'n v. Rosenberg, 119 N.Y.S.3d 441, 443 (1st Dep't 2020). The parties disagree as to whether the voluntary dismissal of the foreclosure action constituted an "affirmative act of revocation."

SLS relies on Freedom Mortgage Corp. v. Engel, 37 N.Y.3d 1, 19, reargument denied, 37 N.Y.3d 926 (2021), to argue that the discontinuance of a foreclosure action constitutes an act

sufficient to revoke the acceleration of a mortgage debt. See Def. Mem. at 13-14; Def. Opp. at 7-8. SLS argues that Engel straightforwardly holds that "when a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action — i.e., the withdrawal of the complaint — constitutes a revocation of that acceleration." Def. Mem. at 14 (quoting Engel, 37 N.Y.3d at 31). Wilkins contends that nothing in the language of the mortgage note permits revocation of acceleration and that Engel did not address whether such revocation would violate the terms of the note. See Pl. Reply at 9-11. Wilkins highlights a concurrence to the Court of Appeals' decision in Engel which observed that "[w]e have not decided whether the notes and mortgages at issue here permit a lender to revoke an acceleration." Pl. Reply at 10 (quoting Engel, 37 N.Y.3d at 37 (Wilson, J., concurring)).

Engel, which involved a number of consolidated cases, characterized the issue before it as "whether the noteholder's voluntary discontinuance of a prior foreclosure action revoked acceleration of the debt, reinstating the borrower's contractual right to repay the loan over time in installments." 37 N.Y.3d at 19. Engel resolved the question as follows: "we hold that where the maturity of the debt has been validly accelerated by commencement of a foreclosure action, the noteholder's voluntary withdrawal of that action revokes the election to accelerate, absent the noteholder's contemporaneous statement to the contrary." Id. In other words, the election to accelerate that occurs by virtue of the foreclosure action is revoked once the action is voluntarily discontinued, unless there is some contemporaneous statement by the noteholder to the contrary. Here, Wilkins has pointed to no such contemporaneous statement.

Wilkins seems to argue that the rule in Engel does not apply where the terms of the mortgage note do not expressly permit the revocation of acceleration. See Pl. Reply at 10-11. Wilkins maintains that "the Second Mortgage does not support unilateral de-acceleration that

would reinstate the Mortgage contract after any voluntary discontinuance of the prior foreclosure action," that "[n]o such provision is found within the four corners of the Mortgage contract," and that courts cannot "by construction, add or excise terms to the Mortgage." See id. at 11. We find Wilkins' argument unpersuasive.

While normally a court cannot change the terms of a contract, nothing in Engel suggests that it applies only where there is a contractual term that governs de-acceleration. Engel observed that "the Appellate Division departments have consistently held that, absent a provision in the operative agreements setting forth precisely what a noteholder must do to revoke an election to accelerate, revocation can be accomplished by an 'affirmative act' of the noteholder within six years of the election to accelerate." 37 N.Y.3d at 28-29 (emphasis added). Engel thus supplies a default rule in those cases where the governing contract does not expressly provide otherwise. Here, Wilkins provides no evidence that the Second Mortgage contained any terms governing the effect of the withdrawal of a foreclosure action.

Other courts have similarly held that there is no requirement for any particular contractual language in order for deacceleration to occur, and thus have rejected arguments identical to the one Wilkins makes here. See Windward Bora, LLC v. U.S. Bank Nat'l Ass'n as Tr. for Truman 2016 SC6 Title Tr. Letter, 2022 WL 843837, at *3 (E.D.N.Y. Mar. 22, 2022) (rejecting the argument "that there was no revocation because the mortgage did not include a provision addressing revocation by stipulation."); OneWest Bank, N.A. v. Simon, 2021 WL 2400993, at *2 (E.D.N.Y. June 11, 2021) (same). In the only decision by the Second Circuit to discuss Engel at length, the court recognized that "Engel indeed decided that a voluntary discontinuance of a foreclosure action was sufficient to de-accelerate a loan." 53rd St., 8 F.4th at

80. Here, Wilkins has identified no decision applying <u>Engel</u> that imposed the requirement he champions.

This reading of <u>Engel</u> is all the more appropriate because <u>Engel</u> did not construe contractual language. Rather, it set forth a rule that clarified the effect of certain conduct (the discontinuance of a foreclosure action) on the running of the statute of limitations for foreclosure actions. <u>See</u> <u>Engel</u>, 37 N.Y.3d at 32 (explaining that its holding "comports with our precedent favoring consistent, straightforward application of the statute of limitations which serves the objectives of finality, certainty and predictability, to the benefit of both borrowers and noteholders" (punctuation omitted)). One New York court has described <u>Engel</u> as creating "a common law judge-made rule as to what constitutes the valid revocation of a prior acceleration of the mortgage debt." <u>Bank of N.Y. Mellon v. Luria</u>, 75 Misc. 3d 1205(A), at *3 (Sup. Ct. 2022); <u>see also</u> <u>Nationstar Mortg., LLC v. Huang</u>, 203 A.D.3d 938, 939 (2d Dep't 2022) ("since the acceleration was revoked <u>as a matter of law</u> when the prior action was voluntarily discontinued, this action was timely" (emphasis added)). Thus, <u>Engel</u>'s holding is not dependent on the presence of any particular contractual language.

Wilkins' argument largely arises from a concurrence to <u>Engel</u> which states that the opinion does not resolve whether there is a contractual right of a mortgagee to revoke an acceleration. <u>See</u> Pl. Reply at 10; <u>Engel</u>, 37 N.Y.3d at 36-37. However, "the remarks in the <u>Engel</u> concurrence . . . are not binding on this Court in the discharge of its obligations under <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, (1938), to apply New York law to the state-law claim before it." <u>OneWest Bank</u>, 2021 WL 2400993, at *2.[4] Wilkins also cites decisions issued before <u>Engel</u> was

---

[4] While there is no state-law claim here, the Court views its obligation to determine the applicable state law in this case in the same manner. <u>See</u> <u>Gallego v. Northland Grp. Inc.</u>, 814 F.3d 123, 128 (2d Cir. 2016) ("the Supreme Court has occasionally directed courts to look to

decided, see Pl. Reply at 10, which are obviously no longer good law. Although Wilkins cites HSBC Bank USA, NA. v. Khemraj, 72 Misc. 3d 1206(A), at *4 (Sup. Ct. 2021), which described the holding in Engel as "all just dictum," that commentary was itself dictum, as the court's decision rested on the fact that the earlier foreclosure action was dismissed rather than voluntarily discontinued by the mortgagee, see id. at *3-4.

We also do not find merit in Wilkins' argument that this interpretation of Engel would "eviscerat[e] the statute of limitations" by permitting a lender "to extend the statute of limitations indefinitely by simply withdrawing the said action and then restarting a new action indefinitely." Pl. Mem. at 22. Engel only held that the discontinuance of a foreclosure action returned the borrower and lender to the pre-foreclosure state. Then, as before the foreclosure action, the statute of limitations resets not based on the actions of the lender, but with each missed payment by the borrower. See Burke, 943 N.Y.S.2d at 542; accord 53rd Street, 8 F.4th at 78. Accordingly, there is no greater risk of prolonged extension of the statute of limitations than would be present for any other unpaid mortgage.

Accordingly, although the 2010 Deutsche Bank foreclosure action accelerated the amounts due under the mortgage note, the February 8, 2012 voluntary discontinuance of that action revoked the acceleration and "return[ed] the parties to their pre-acceleration rights and obligations." Engel, 37 N.Y.3d at 28. "[F]ollowing [this] de-acceleration, a payment default could give rise to an action on the note to collect missed installments (an action with a six-year statute of limitations that runs on each installment from the date it was due)." Id.; accord Burke, 943 N.Y.S.2d at 542 (new cause of action and new statute of limitations for each missed

---

state law 'to fill the interstices of federal legislation'" (quoting United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-28 (1979))).

payment). Thus, the six-year limitations period for SLS to bring a foreclosure action had not expired at the time of SLS's calls to Wilkins.

In light of this conclusion, the Second Mortgage remained enforceable after the discontinuance of the foreclosure action and a new limitations period began to run each time Wilkins failed to make his monthly payment. There was therefore nothing misleading about the communications between SLS and Wilkins. See Consumer Fin. Prot. Bureau v. Weltman, Weinberg & Reis Co., L.P.A., 2018 WL 3575882, at *3 (N.D. Ohio July 25, 2018) ("Creating a legitimate fear of the actual consequences of owing a valid debt is not misleading or deceptive under the act."); Tucker v. CBE Grp., Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (voice messages that were "factually accurate" and not misleading or deceptive did not violate FDCPA); see also Moukengeschaie, 2016 WL 1274541, at *4 (a debt collector's "threatened action" could be false or misleading only if it "could not legally be taken or was not intended to be taken.").

Accordingly, summary judgment is granted to SLS on Wilkins' claim under 15 U.S.C. § 1692e.

### 2. Calling with Intent to Harass

Wilkins argues that SLS violated the FDCPA by calling him regarding the debt, causing his phone "to ring repeatedly with intent to annoy, abuse or harass" in violation of 15 U.S.C. § 1692d(5). See Pl. Mem. at 9. The legislative history of the FDCPA gives illustrations of the kinds of abuse that the Act was meant to eliminate, "such as use of obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials

and attorneys, and simulating legal process." Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) (internal punctuation and citation omitted). Wilkins relies on the call records to support this part of his FDCPA claim, offering no evidence of SLS's intent and essentially no argument that the frequency of SLS's calls established a violation of the FDCPA. See Pl. Mem. at 1, 9, 25. "Courts generally consider the volume and pattern of calls in determining whether there was an intent to annoy or harass." Kenny v. Mercantile Adjustment Bureau, LLC, 2013 WL 1855782, at *3 (W.D.N.Y. May 1, 2013); accord Beeders v. Gulf Coast Collection Bureau, 796 F. Supp. 2d 1335, 1337 (M.D. Fla.), aff'd, 432 F. App'x 918 (11th Cir. 2011); Chiverton v. Fed. Fin. Grp., Inc., 399 F. Supp. 2d 96, 101 (D. Conn. 2005) ("[A]ctionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls."). "[T]here is no bright line rule for how many calls are sufficient to support an inference of an intent to harass, oppress or abuse." Zurich Am. Ins. Co. v. Ocwen Fin. Corp., 990 F.3d 1073, 1082 (7th Cir. 2021).

The record shows that SLS called Wilkins approximately 80 times between May 2017 and February 2020, an average of slightly more than 2 times per month. See Call Log, annexed as Ex. 4 to Wilkins Aff.; Pl. 56.1 Statement ¶ 14; Def. Supp. 56.1 Statement ¶ 14. While SLS's call frequency increased somewhat between December 2019 and February 2020, the frequency was no more than approximately once each week. See Call Log at 1. Courts have granted summary judgment for a defendant debt collector where the pattern of calls was far more egregious than that present here. See Mimbs v. J.A. Cambece L. Off., P.C., 2013 WL 11982289, at *5 (S.D. Fla. July 31, 2013) (14 calls over 9 day period); Beeders, 796 F. Supp. 2d at 1338 (a total of 40 calls in a span of 4 months, with "no more than one call every two days"). Similarly, courts have granted summary judgment for defendant debt collectors on claims involving a greater volume of calls, at least where the record lacked "any other egregious conduct to evince

an intent to annoy, abuse or harass." Carman v. CBE Grp., Inc., 782 F. Supp. 2d 1223, 1232 (D. Kan. 2011) (149 calls over 2-month period); see Jones v. Rash Curtis & Assocs., 2011 WL 2050195, at *3 (N.D. Cal. Jan. 3, 2011) (179 calls in 2009). While the total number of calls here was considerable, they were spread over years, and the relatively low frequency does not allow the inference that SLS made the calls with the intention of harassing Wilkins, as opposed to the legitimate purpose of speaking with him regarding his outstanding debts. See Merch. v. Nationwide Recovery Serv., Inc., 440 F. Supp. 3d 1369, 1383 (N.D. Ga. 2020) ("the low frequency of calls between Defendant and Plaintiff suggests that their natural consequence[] was not to harass, oppress, or abuse and that Defendant's intent was not to annoy, abuse, or harass Plaintiff.").

Accordingly, summary judgment is granted to SLS on Wilkins' claim under 15 U.S.C. § 1692d(5).

### 3. Calls at Wilkins' Workplace

Wilkins contends that SLS violated the FDCPA by calling him at his place of employment. See Pl. Mem. at 19. The FDCPA prohibits debt collectors from communicating with debtors "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." 15 U.S.C. § 1692c(a)(3). Wilkins argues that SLS violated the FDCPA by calling him "at his place of employment during work hours on December 4, 2018." See Pl. Mem. at 19; Pl. Reply at 1, 8. Wilkins claims that this violation is demonstrated by the call transcript. See Pl. Mem. at 19. Specifically, during the December 4, 2018 telephone call between Wilkins and SLS, Wilkins ended the call by stating "[l]isten, listen, my man, my man. You said I'm down 4000 days, do what you got to do. Stop calling me, I'm working. [A]ll right.

Thank you." Transcript of Dec. 4, 2018 Telephone Call, annexed as Ex. 5 to Wilkins Aff., at 3. SLS argues that Wilkins' claim fails because the one-year statute of limitations expired as to the December 4, 2018 call and that, in any event, the call did not violate the FDCPA. See Def. Mem. at 18-19. It is not necessary to reach the statute of limitations issue because Wilkins has failed to show a violation of 15 U.S.C. § 1692c(a)(3).

First, there is nothing in Wilkins' statement during the December 4, 2018 call to indicate that the call was placed to Wilkins at his "place of employment." Wilkins supplies no evidence that the phone number at which he was contacted was in fact his employer's, rather than his own. He also supplies no evidence that he was "at" his place of employment at the time the December 4, 2018 call or any other call was made. Indeed, Wilkins admitted at his deposition that he is a "consultant," Transcript of Feb. 15, 2022 Deposition of Craig Wilkins, annexed as Ex. A to the Declaration of Robert Brener (Docket # 31-4), at 126:6-10, and appeared to testify that he took the calls from his "car," id. at 102:5-104:12.

More to the point, Wilkins supplies no evidence that SLS knew or had reason to know that Wilkins' employer (whom Wilkins never identifies) prohibited Wilkins from receiving debt collection calls at work. Courts have held that a debt collector is on notice of such a prohibition "when a consumer states in plain English that she cannot speak to the debt collector at work." Horkey v. J.V.D.B. & Assocs., Inc., 333 F.3d 769, 771, 773 (7th Cir. 2003) (summary judgment granted to plaintiff on 15 U.S.C. § 1692c(a)(3) claim where plaintiff told debt collector "that [she] could not talk to him at work"). Nothing like that occurred here. The statement "I'm working" is not sufficient to indicate that an employer prohibits the speaker from taking calls.

Accordingly, summary judgment is granted to SLS on Wilkins' claim under 15 U.S.C. § 1692c(a)(3).

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Docket ## 31, 34) is granted as to all claims alleged in the complaint. Plaintiff's motion for summary judgment (Docket # 36) is denied. The Clerk of Court is requested to enter judgment for the defendant and to close this case.

Dated: August 23, 2022
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge